IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| FELICIA BLACKMON,<br><br>Plaintiff,<br><br>v.<br><br>1) TERRELL COUNTY SCHOOL SYSTEM,<br>2) JOHN L. GARDNER, in his official capacity,<br>3) MICHAEL OXFORD, in his official capacity,<br>4) MELLEAN DAVIS, in her official capacity,<br>5) RAY MOSES, in his official capacity,<br>6) ALBERT CRUMBLEY, in his official capacity,<br>7) DOUGLAS BELL, in his individual capacity, and<br>8) SHERECA HARVEY, in her individual capacity,<br><br>Defendants. | CIVIL ACTION NO.<br><br>_____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

1. COMES NOW Plaintiff FELICIA BLACKMON, through her undersigned counsel, and files this Complaint against TERRELL COUNTY SCHOOL SYSTEM ("TCSS"), JOHN L. GARDNER ("Gardner"), MICHAEL OXFORD ("Oxford"), MELLEAN DAVIS ("Davis"), RAY MOSES ("Moses"), ALBERT CRUMBLEY

1

("Crumbley"), DOUGLAS BELL ("Bell"), and SHERECA HARVEY ("Harvey") (collectively, "Defendants"), and shows the Court as follows:

## NATURE OF COMPLAINT

2. Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended ("FLSA"), and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and (d), venue is proper in this District Court and Division because a substantial part of the events or omissions giving rise to the claim occurred within the Albany Division of the Middle District of Georgia, because Defendant TCSS's contacts within the Middle District of Georgia would be sufficient to subject TCSS to personal jurisdiction if the Middle District of Georgia was a separate State, and because the principal place of business of Defendant TCSS is located within the Albany Division of the Middle District of Georgia.

## PARTIES

5. Ms. Blackmon is a citizen of the United States of America.

6. Ms. Blackmon is a resident of the state of Georgia.

7. Defendant TERRELL COUNTY SCHOOL SYSTEM ("TCSS") is a body corporate with the capacity to sue and be sued.

8. TCSS may be served with process by delivering a copy of the Summons and Complaint to the Terrell County Board of Education Chairman, Ray Moses, at the Terrell County Board of Education office, which is located at 761 1st Avenue SE, Dawson, GA 39842. Alternatively, TCSS may be served with process by delivering a copy of the Summons and Complaint to its Superintendent, Shereca Harvey, at the TCSS District Office, which is located at 761 1st Avenue SE, Dawson, GA 39842.

9. Defendant JOHN L. GARDNER ("Gardner") is being sued in his official capacity because he is a member of the Terrell County Board of Education ("TCBOE").[1]

10. MICHAEL OXFORD ("Oxford") is being sued in his official capacity because he is a member of TCBOE.

11. Defendant MELLEAN DAVIS ("Davis") is being sued in her official capacity because she is a member of TCBOE.

12. Defendant RAY MOSES ("Moses") is being sued in his official capacity because he is a member of TCBOE.

---

[1] TCBOE isn't a legal entity capable of being sued under Georgia law. This is why the members of the Board are being sued in their official capacities. Cf. Weems v. Fulton Cty. Sch. Dist., No. 1:17-cv-2575-AT-JKL, 2018 U.S. Dist. LEXIS 249538, at *14-15 (N.D. Ga. Apr. 26, 2018).

13. Defendant ALBERT CRUMBLEY ("Crumbley") is being sued in his official capacity because he is a member of TCBOE.

14. Gardner, Oxford, Davis, Moses, and Crumbley may be served with process by delivering a copy of the Summons and Complaint to each of them individually at the Terrell County Board of Education office, which is located at 761 1st Avenue SE, Dawson, GA 39842.

15. Defendant DOUGLAS BELL ("Bell") is being sued in his individual capacity.

16. Bell was the Superintendent of TCSS prior to July 1, 2025, and is the current Assistant Superintendent of TCSS.

17. As Superintendent and Assistant Superintendent, Bell had, and still has, authority over the terms and conditions of Ms. Blackmon's employment, including Ms. Blackmon's work hours, job duties, how much she was paid, when she was paid, etc.

18. Defendant SHERECA HARVEY ("Harvey") is being sued in her individual capacity.

19. Harvey was the former Assistant Superintendent of TCSS during the Relevant Time Period, and as of July 1, 2025, is the current Superintendent of TCSS.

20. As Assistant Superintendent and Superintendent, Harvey had, and still has, authority over the terms and conditions of Ms. Blackmon's employment, including

Ms. Blackmon's work hours, job duties, how much she was paid, when she was paid, etc.

21. Bell and Harvey may be served with process by delivering a copy of the Summons and Complaint to each of them individually at the TCSS District Office, which is located at 761 1st Avenue SE, Dawson, GA 39842.

22. Ms. Blackmon is jointly employed by TCSS and TCBOE. For example, Ms. Blackmon is listed as an employee of TCSS on its website. However, TCBOE is listed as Ms. Blackmon's employer on her paystubs.

23. Defendants are subject to the FLSA.

24. TCSS and TCBOE are public agencies as defined by the FLSA. 29 U.S.C. § 203(x).

25. At all times relevant to this lawsuit, Defendants were operating an "enterprise engaged in commerce or in the production of goods for commerce" because they were engaged in an "activity of a public agency"—namely, operating the public schools of Terrell County, Georgia. See 29 U.S.C. § 203(s)(1)(C).

26. Defendants are an "employer" as that term is defined by 29 U.S.C. § 203(d).

27. Ms. Blackmon is an "employee" within the meaning of the FLSA.

28. At all relevant times, Defendants categorized Ms. Blackmon as an employee and controlled all aspects of Ms. Blackmon's work, including what she did, how she did it, when she did it, where she did it, etc.

## STATEMENT OF FACTS

### Dates of Employment and Nature of the Work

29. In 2014, Defendants hired Ms. Blackmon as a bus driver.

30. As a bus driver, Ms. Blackmon transported students to/from school within Terrell County, Georgia.

31. Ms. Blackmon still works as a bus driver for Defendants and has done so from 2014 to the present.

32. In 2016, Defendants also hired Ms. Blackmon as a paraprofessional at Terrell Middle School.

33. Ms. Blackmon still works as a paraprofessional for Defendants and has done so from 2016 to the present.

34. In 2024, Defendants also hired Ms. Blackmon as a track and field coach at Terrell High School. However, Ms. Blackmon's work as a school bus driver and paraprofessional remained her primary duties.

35. Ms. Blackmon still works as a track coach for Defendants and has done so from 2024 to the present.

36. From 2022 to the present, Ms. Blackmon has worked approximately 190 days (38 weeks) per year.

37. From 2022 to the present, Ms. Blackmon has performed both paraprofessional and bus driver duties for 177 days (35.4 weeks) per year.

38. From 2022 to the present, Ms. Blackmon has performed paraprofessional duties but no bus driver duties for 13 days (2.6 weeks) per year. (These 13 days are teacher workdays and digital learning days.)

39. From 2024 to the present, Ms. Blackmon has performed duties as a track coach for approximately 16 weeks per year.

## Work Hours

### "Typical" Hours as a Bus Driver and Paraprofessional

40. From 2022 to the present, Ms. Blackmon has worked both as a bus driver and as a paraprofessional five days per week (Monday through Friday), 177 days (35.4 weeks) per year.

41. Ms. Blackmon typically starts her bus route "pre-trip" duties around 6:15 a.m. and begins her bus route around 6:30 a.m.

42. Ms. Blackmon typically completes her morning bus route around 7:30 a.m.

43. Ms. Blackmon typically completes her morning bus route "post-trip" duties around 7:45 a.m.

44. From 7:45 a.m. to 2:45 p.m., Ms. Blackmon works at Terrell Middle School as a paraprofessional.

45. In her role as a paraprofessional, Ms. Blackmon works with children who are designated as "special education self-contained." This designation means that the children do not leave the classroom and require continuous supervision.

46. In light of this designation, Ms. Blackmon is not completely relieved from work during lunch and must eat lunch while still supervising the children.

47. Ms. Blackmon typically begins her afternoon bus route "pre-trip" duties around 2:45 p.m. and begins her afternoon bus route around 3:00 p.m.

48. Ms. Blackmon's afternoon bus route typically ends around 4:15 p.m., and she typically completes her afternoon "post-trip" duties around 4:30 p.m.

49. Thus, Ms. Blackmon typically works **at least 10.25 hours per day** (from 6:15 a.m. to 4:30 p.m.) on the 177 days (35.4 weeks) per year that she works as both a bus driver and as a paraprofessional.

**"Extra" Hours as a Bus Driver**

50. Sometimes, Ms. Blackmon's afternoon bus route and afternoon "post-trip" duties take longer than normal because of the weather. For example, if it is raining, the route often takes longer to run. It also takes longer for Ms. Blackmon to clean the bus (which is one of her afternoon "post-trip" duties) on rainy days.

51. Defendants know when Ms. Blackmon's routes take longer than normal because she logs and submits her actual time on paper timesheets. (However, she is not permitted to log her "pre-trip" and "post-trip" time—only her route time.)

52. Sometimes, Ms. Blackmon must run a "double route" in the morning or in the afternoon to fill in for a bus driver who is absent.

53. Because "double routes" take longer to complete, Ms. Blackmon must start her "pre-trip" earlier than normal—typically around 5:45 a.m.—and her route earlier than normal—typically around 6:00 a.m.—when she runs a "double route" in the morning.

54. Likewise, Ms. Blackmon ends her afternoon route later than normal—typically around 5:00 p.m.—and her afternoon "post-trip" later than normal—typically around 5:15 p.m.—when she runs a "double route" in the afternoon.

55. Defendants know when Ms. Blackmon runs "double routes" and when they begin or end because she logs and submits her actual time on paper timesheets. (However, she is not permitted to log her "pre-trip" and "post-trip" time—only her route time.)

56. Sometimes, Ms. Blackmon is assigned to drive for after-hours sporting events or field trips within the state of Georgia. In these instances, Ms. Blackmon must conduct her "pre-trip," drive the students to the event, wait at the event until it concludes, drive the students back to school from the event, and then conduct her "post-trip."

57. Defendants know how long it takes for Ms. Blackmon to drive to these events, how long she has to wait at the events, and how long it takes for her to drive from the events because she logs and submits her actual drive time on paper timesheets.

(She is not permitted to log her "pre-trip" and "post-trip" time—only her actual route time.)

**Hours as a Track Coach**

58.     In addition, from 2024 to the present, Ms. Blackmon has worked as a high school track coach for Defendants for approximately 16 weeks per year from January through April/May.

59.     In this role, Ms. Blackmon typically conducts four 2-hour practices per week.

60.     In addition, she typically attends a track meet on Saturday, and her various duties attendant to those track meets typically last from around 8:00 a.m. to around 8:00 p.m.

61.     Thus, Ms. Blackmon typically works as a track coach for Defendants for an additional **20 hours per week** for 16 weeks per year.

**Total Hours**

62.     Ms. Blackmon estimates that her total hours worked from 2022 to 2025 are as follows:

- 2022:
    - At least **40 hours** per week for approximately 3 weeks[3]
    - At least **51.25 hours** per week for approximately 35 weeks

---

[3] Ms. Blackmon worked 8-hour days as a paraprofessional in the 3 weeks when she didn't drive a bus.

10

- 2023:
    - At least **40 hours** per week for approximately 3 weeks
    - At least **51.25 hours** per week for approximately 35 weeks
- 2024:
    - At least **40 hours** per week for approximately 3 weeks
    - At least **51.25 hours** per week for approximately 19 weeks
    - At least **71.25 hours** per week for approximately 16 weeks (Jan. - Apr./May 2024)
- January 1, 2025 – December 31, 2025:
    - At least **40 hours** per week for approximately 3 weeks
    - At least **51.25 hours** per week for approximately 19 weeks
    - At least **71.25 hours** per week for approximately 16 weeks (Jan. - Apr./May 2025).

63. This is a good-faith estimate as Ms. Blackmon is not in possession of most of her timesheets. Ms. Blackmon reserves the right to modify this estimate after discovery.

## Unpaid Overtime Estimate

64. On information and belief, from 2022 to the present, Ms. Blackmon has been paid for her paraprofessional work at an hourly rate of **$11.62**, and for her bus driver work at an hourly rate of **$19.00**.

65. On information and belief, in 2024 and 2025, Ms. Blackmon received nine total monthly "Extracurricular Supplements"—eight in the amount of $173.82, and one in the amount of $163.40—for a total of $1,553.96. Ms. Blackmon received these payments for approximately 32 weeks of work as a track coach (16 in 2024 and 16 in 2025).

66. Ms. Blackmon estimates that she worked 640 hours as a track coach over 2024 and 2025 combined (32 [weeks] x 20 [hours per week]).

67. This means that her hourly rate for her work as a track coach in 2024 and 2025 was **$2.43 per hour** ($1,553.96 [total amount paid] / 640 [hours]).

68. By law, Ms. Blackmon had to be paid at least $7.25 per hour for her work as a track coach.

**2022**

69. Ms. Blackmon estimates that she worked **393.75 hours** of overtime in 2022 (11.25 [OT hours per week] x 35 [weeks]).

70. Ms. Blackmon estimates that her overtime rate in 2022 was **$22.97** ((($11.62 [paraprofessional rate] + $19.00 [bus driver rate]) / 2) x 1.5).

71. Thus, Ms. Blackmon estimates that she earned **$9,044.44** in overtime wages in 2022 (393.75 [total OT hours] x $22.97 [OT rate]).

72. On information and belief, of this amount, she was paid $0.

**2023**

73. Ms. Blackmon estimates that she worked **393.75 hours** of overtime in 2023 (11.25 [OT hours per week] x 35 [weeks]).

74. Ms. Blackmon estimates that her overtime rate in 2023 was **$22.97** ((($11.62 [paraprofessional rate] + $19.00 [bus driver rate]) / 2) x 1.5).

75. Thus, Ms. Blackmon estimates that she earned **$9,044.44** in overtime wages in 2023 (393.75 [total OT hours] x $22.97 [OT rate]).

76. On information and belief, of this amount, she was paid $0.

**2024**

77. Ms. Blackmon estimates that she worked **713.75 hours** of overtime in 2024 ((11.25 [OT hours per week] x 19 [weeks]) + (31.25 [OT hours per week] x 16 [weeks])).

78. Ms. Blackmon estimates that her overtime rate in 2024 was **$20.75** ((($11.62 [paraprofessional rate] + $19.00 [bus driver rate] + $10.88[4] [track coach rate]) / 3) x 1.5)).

79. Thus, Ms. Blackmon estimates that she earned **$14,810.31** in overtime wages in 2024 (713.75 [OT hours] x $20.75 [OT rate]).

80. On information and belief, of this amount, she was paid $0.

**January – July 2025**

---

[4] By law, Ms. Blackmon had to be paid at least $7.25 per hour for her work as a track coach. So, the overtime rate for her work as a track coach is being calculated at $7.25 x 1.5.

81. Ms. Blackmon estimates that she worked **522.5 hours** of overtime from January – July 2025 ((11.25 [OT hours per week] x 2 [weeks]) + (31.25 [OT hours per week] x 16 [weeks])).

82. Ms. Blackmon estimates that her overtime rate for January – July 2025 was **$20.75** ((($11.62 [paraprofessional rate] + $19.00 [bus driver rate] + $10.88[5] [track coach rate]) / 3) x 1.5).

83. Thus, Ms. Blackmon estimates that she earned **$10,841.88** in overtime wages from January – July 2025 (522.5 [OT hours] x $20.75 [OT rate]).

84. On information and belief, of this amount, she was paid $0.

**August – December 2025**

85. Starting on August 1, 2025, Defendants started paying Ms. Blackmon for 5 hours per week of overtime at a rate of $22.97, which is equal to 1.5 times the average of Ms. Blackmon's paraprofessional hourly rate ($11.62) and her bus driver hourly rate ($19.00).[6]

86. However, Ms. Blackmon estimates that she has worked and will work at least 11.25 hours of overtime per week from August 1, 2025 to the present. Thus, she is being paid nothing for **6.25 hours** of overtime per week.

---

[5] By law, Ms. Blackmon had to be paid at least $7.25 per hour for her work as a track coach. So, the overtime rate for her work as a track coach is being calculated at $7.25 x 1.5.

[6] (($11.62 + $19.00) / 2) x 1.5 = $22.97.

87. Ms. Blackmon estimates that she will work **191.25 hours** of overtime from August – December 2025 (11.25 [OT hours per week] x 17 [weeks]).

88. Ms. Blackmon estimates that her overtime rate for August - December 2025 is **$22.97** ((($11.62 [paraprofessional rate] + $19.00 [bus driver rate]) / 2) x 1.5).

89. Thus, Ms. Blackmon estimates that she will earn **$ 4,393.01** in overtime wages from August - December 2025 (191.25 [OT hours] x $22.97 [OT rate]). However, she is only slated to be paid approximately $1,694.04 in overtime wages from August - December 2025.

**Total Overtime Wages**

90. None of Ms. Blackmon's paystubs reflect the actual amount she worked each month[7], and she is not in possession of most of her timesheets.

91. Thus, Ms. Blackmon can only make a good-faith estimate of the amount of overtime to which she is entitled.

92. This overtime estimate is based on Ms. Blackmon's hours estimate of 51.25 hours worked per week (on average). **Notably, it does not include the "extra" bus driver work that she performed and is also entitled to be paid overtime for.**

93. Using these figures, Ms. Blackmon currently estimates that she is owed **at least $38,314.40** in unpaid overtime wages from October 2, 2022 through October 3, 2025 (i.e., **$2,325.71** for 9 weeks in 2022, **$9,044.44** for 2023, **$14,810.31** for

---

[7] Ms. Blackmon was paid monthly.

2024, **$10,841.88** for January - July 2025, and **$1,292.06**[10] for August – October 3, 2025).

94. Ms. Blackmon will revise this estimate as necessary after discovery.

## COUNT ONE
## Failure to Pay Overtime in Violation of the FLSA

95. Ms. Blackmon reasserts and incorporates by reference Paragraphs 5 through 94 of this Complaint as if fully set forth herein.

96. Defendants violated the FLSA.

97. Ms. Blackmon was a non-exempt employee.

98. Ms. Blackmon regularly worked overtime throughout her employment.

99. Defendants never paid Ms. Blackmon overtime prior to August 1, 2025.

100. Defendants started paying Ms. Blackmon some overtime as of August 1, 2025, but not the full amount owed for every overtime hour worked each week.

101. Defendants knew or should have known that Ms. Blackmon regularly worked over 40 hours per week because (1) they knew she worked 35 hours per week as a paraprofessional, and (2) she reported her actual drive time—around 2.25 hours per day, at least—on paper timesheets.

102. Defendants knew or should have known that Ms. Blackmon was entitled to overtime.

---

[10] (6.25 [unpaid OT hours per week] x 9 [weeks] x $22.97 [OT rate]) = $1,292.06.

103. In August 2025, Defendants started paying Ms. Blackmon some overtime for doing the same duties that she had performed throughout the relevant time period.

104. Defendants willfully or recklessly disregarded their obligations under the FLSA with regard to Ms. Blackmon's entitlement to overtime.

105. Because Defendants willfully violated the FLSA, Ms. Blackmon is entitled to a three-year limitations period.

106. As a result of Defendants' unlawful conduct, Ms. Blackmon is entitled to recover her actual unpaid overtime wages, an equivalent amount as liquidated damages, and her attorneys' fees and costs.

107. Ms. Blackmon estimates that she is entitled to unpaid overtime wages in the approximate amount of at least **$38,314.40**, liquidated damages in the approximate amount of at least **$38,314.40**, and her attorneys' fees and costs.[12]

## COUNT TWO
## Failure to Pay Minimum Wages in Violation of the FLSA

108. Ms. Blackmon reasserts and incorporates by reference Paragraphs 5 through 94 of this Complaint as if fully set forth herein.

109. On information and belief, in 2024 and 2025, Ms. Blackmon received nine total monthly "Extracurricular Supplements"—eight in the amount of $173.82, and

---

[12] Ms. Blackmon's initial estimate of her damages is based on the limited information currently available. Ms. Blackmon reserves the right to re-calculate her damages after discovery.

17

one in the amount of $163.40—for a total of $1,553.96. Ms. Blackmon received these payments for 32 weeks of work as a track coach (16 in 2024 and 16 in 2025).

110. Ms. Blackmon estimates that she worked 640 hours as a track coach over 2024 and 2025 combined (32 [weeks] x 20 [hours per week]).

111. This means that her hourly rate for her work as a track coach in 2024 and 2025 was **$2.43 per hour** ($1,553.96 [total amount paid] / 640 [hours]).

112. By law, Ms. Blackmon had to be paid at least $7.25 per hour for her work as a track coach.

113. Defendants' failure to pay Ms. Blackmon $7.25 per hour for these hours is a minimum wage violation.

114. Ms. Blackmon estimates that she is entitled to unpaid minimum wages in the approximate amount of **$3,084.80** (($7.25 - $2.43) [wage differential] x 640 [hours]), liquidated damages in the approximate amount of **$3,084.80**, and her attorneys' fees and costs.[13]

## COUNT THREE
### Declaratory Judgment

115. Ms. Blackmon reasserts and incorporates by reference Paragraphs 5 through 94 of this Complaint as if fully set forth herein.

---

[13] Ms. Blackmon's initial estimate of her damages is based on the limited information currently available. Ms. Blackmon reserves the right to re-calculate her damages after discovery.

116. Ms. Blackmon seeks a declaration that Defendants violated the FLSA by not paying her overtime throughout her employment.

117. Ms. Blackmon seeks a declaration that Defendants violated the FLSA by not paying her the appropriate minimum wage for every hour worked throughout her employment.

118. Ms. Blackmon seeks a declaration that Defendants' FLSA violations were willful.

## DEMAND FOR JURY TRIAL

119. Ms. Blackmon demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

A. For a trial by jury on all issues so triable;

B. For a declaratory judgment in the manner set forth above;

C. For a judgment in Plaintiff's favor for unpaid overtime wages, an equivalent amount as liquidated damages, prejudgment interest on unpaid wages, reasonable attorneys' fees and costs in accordance with the FLSA, and all other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA; and

D. For such other and further relief as this Court deems proper and just.

Respectfully submitted this 3rd day of October 2025.

        SMITH LAW, LLC

        */s/ William J. Smith*
        William J. Smith
        Georgia Bar No. 710280
        william@smithlaw-llc.com
        Louise N. Smith
        Georgia Bar No. 131876
        louise@smithlaw-llc.com
        *Attorneys for Plaintiff*

3611 Braselton Highway
Suite 202
Dacula, GA 30019
T: (678) 889-2264 (William)
T: (678) 889-2898 (Louise)
F: (844) 828-5615

## CERTIFICATE OF SERVICE

I hereby certify that I have caused or will cause service to issue upon the defendants to this Action pursuant to Fed. R. Civ. P. 4.

This the 3rd day of October 2025.

        */s/ William J. Smith*
        William J. Smith
        Georgia Bar No. 710280
        *Attorney for Plaintiff*